IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 06-cv-01405-WYD-MJW

CLARENCE VANDEHEY;
WILLIAM LANGLEY;
SAMUEL LINCOLN; and
JARED HOGUE, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

LOU VALLARIO, Sheriff of Garfield County, Colorado, in his official capacity; and
SCOTT DAWSON, a Commander in the Garfield County Sheriff's Department,
in his official capacity,

      Defendants.

---

**ORDER ON AMENDED MOTION TO CERTIFY PLAINTIFF CLASS
AND OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION**

---

      This matter comes before the Court on Plaintiffs' Amended Motion to Certify a

Plaintiff Class (Dkt. # 7), filed August 2, 2006, and Plaintiffs' Objection to a portion of

the Magistrate Judge's order on plaintiffs' motion to permit discovery (Dkt. # 76), filed

July 24, 2007, which is interrelated with the class action certification motion.

      This matter was reassigned to the undersigned in January 2008 after the

untimely death of Judge Phillip S. Figa, to whom this case was originally assigned.

During his long illness, Judge Figa, although working in his office, was physically

unable to hold a hearing on plaintiff's motion to certify a class, and therefore it did not

get decided.  After transfer to the undersigned, a hearing on plaintiffs' motion and

objection to the discovery order was held before me on February 14, 2008.  On

February 12, 2008, just two days before the hearing on plaintiffs' motion, defendants submitted a supplemental response brief in opposition to plaintiff's motion (Dkt. # 111). At the hearing, plaintiffs were given until March 4, 2008 to file a further supplemental response brief, and they did file a supplemental response on February 28, 2004 (Dkt. # 118). The briefing has been completed, and I now enter the following rulings.

## I. BACKGROUND

### A. Plaintiffs' Substantive Claims

The four plaintiffs in this case, inmates at the Garfield County Jail when they filed their original complaint in this civil rights case on July 19, 2006 and an Amended Complaint on August 1, 2006, allege, in six claims for relief, a pervasive practice of subjecting prisoners in the county jail to threats and use of excessive and disproportionate force in violation of their Eighth Amendment rights and rights under the Colorado Constitution (First, Second and Third Claims), an interference with their ability to communicate with their attorneys in violation of the Sixth Amendment (Fourth Claim), a denial of access to mental health care (Fifth Claim), and punishment without due process in violation of the Fourteenth Amendment and the Colorado Constitution (Sixth Claim). The named defendants are the Sheriff of Garfield County, Lou Vallario, sued in his official capacity, and the commander in the County Sheriff's Department, Scott Dawson, who is alleged to be in charge of the detention division of the Department and primarily responsible for managing and supervising the operations of the jail (Amended Complaint ¶¶ 14-15).

In their 85-page, 337-paragraph class action Amended Complaint, the four plaintiffs allege that the excessive force, detailed in Section V of the complaint, consisted of the punitive use of, and the threat to use, restraints and restraint chairs[1] (*Id.* ¶¶ 18-38), pepper spray or OC spray[2] (*Id.* ¶¶ 39-47), pepper ball guns[3] (*Id.* ¶¶ 48-70), tasers[4] (*Id.* ¶¶ 71-81) and electroshock belts[5] (*Id.* ¶¶ 82-98). The First Claim for Relief appears to address primarily the use of disproportionate force arising from the restraint chair, pepper ball guns, tasers and pepper spray (*Id.* ¶¶ 293-99). The Second Claim appears to address primarily claims of excessive force arising from the use of the electroshock belt and the inadequate training in connection with its use (*Id.* ¶¶ 301-07). The Third Claim appears to address primarily the use of disproportionate force arising from the restraint chair (*Id.* ¶¶ 309-16).

---

[1] This device is a metal framed chair on wheels with seven straps designed to fully immobilize a prisoner's legs, arms and body. The arms are strapped to horizontal armrests, and the legs and ankles are secured. Only the prisoner's head and neck retains some mobility (Amended Complaint ¶ 18).

[2] Pepper spray, also known as OC spray, causes intensely painful burning sensations, disorientation, anxiety and panic, and can cause an involuntary closing of the eyes, a gagging reflex and temporary paralysis of the larynx. Plaintiffs allege that pepper spray poses serious risks to prisoners' health, safety and even their lives (*Id.* ¶¶ 39-40).

[3] This device is similar to a paintball gun, except that it launches high-velocity pellets that explode on impact, releasing a super irritant called PAVA, which is chemically similar to but more concentrated than the irritant in pepper spray (*Id.* ¶ 48).

[4] Tasers deliver a minimum five-second, 50,000 volt electric shock that causes excruciating and unbearable pain. Deputies are able to deliver more than five seconds of electricity simply by continuing to press the taser's trigger (*Id.* ¶ 71).

[5] This device, also known as the Nova Belt, is strapped around the prisoner's waist and when activated by a remote control switch delivers an eight-second, 50,000 volt charge through electrodes placed near the prisoner's kidneys (*Id.* ¶ 82).

In addition, Plaintiffs Vandehey and Langley allege a failure to provide requested mental health care (*Id.* ¶¶ 117-27; 140-49). In Section VI of the Amended Complaint, a section not contained in the original complaint, plaintiffs allege a denial of adequate mental health care to indigent prisoners (*Id.* ¶¶ 195-211). In the Fifth Claim for Relief in the Amended Complaint, plaintiffs assert that the failure to provide mental health care, and the denial of care to indigents, violates the Eighth and Fourteenth Amendments, the Colorado Constitution, and C.R.S. § 17-26-104.5, a statute which states that a person's inability to pay shall not be the basis for denying medical treatment.

In Section VII of the Amended Complaint, a section also not contained in the original complaint, plaintiffs allege that they are subject to punishment without due process of law. Specifically, they assert that it is standard operating procedure in the county jail for the deputies to "sentence" prisoners to significant punishment for alleged disciplinary infractions, including minor breaches of jail rules, without due process and without following the procedures in the Inmate Handbook (Amended Complaint ¶¶ 212-24). In the Sixth Claim for Relief of the Amended Complaint, plaintiffs assert that such punishment violates the Fourteenth Amendment and the Colorado Constitution (*Id.* ¶¶ 329-34).

Plaintiffs allege in Section VIII of their Amended Complaint, and in their Fourth Claim for Relief, that defendants interfered with prisoners' rights to communicate confidentially with their attorneys (*Id.* ¶¶ 225-43; 317-21).

The four named plaintiffs also allege that they have either exhausted the available administrative remedies with respect to their grievances or that a meaningful grievance procedure is not available (*Id.* ¶¶ 248-80).

## B.    Class Action Allegations

The class action allegations (*Id.* ¶¶ 281-89), assert that the four named plaintiffs seek to represent a class of persons defined as: "All persons who, now or at any time in the future, are or will be prisoners in the custody of the Garfield County Sheriff's Department." (*Id.* ¶ 282).  Plaintiffs Vandehey, Lincoln and Hogue, who were pretrial detainees at the time the Complaint was filed,[6] seek to represent a subclass of persons (Subclass A) defined as follows: "All pretrial detainees who, now or at any time in the future, are or will be prisoners in the custody of the Garfield County Sheriff's Department." (*Id.* ¶ 283).   Plaintiff William Langley, a post-conviction prisoner when the Complaint was filed, seeks to represents a subclass of persons (Subclass B) defined as follows: "All post-conviction prisoners who, now or at any time in the future, are or will be prisoners in the custody of the Garfield County Sheriff's Department."  (*Id.* ¶ 284).  However, in a supplemental filing by plaintiffs on February 20, 2008 (Dkt. # 116), they indicate that they no longer believe subclasses are necessary.  Thus, I deem the request for certification of subclasses to be withdrawn.

The Amended Complaint further alleges compliance with the requirements of Fed. R. Civ. P. 23 as to numerosity, common questions of law and fact, and typicality of

---

[6] As discussed below, all four named plaintiffs have been released from the custody of the county jail after the filing of the Amended Complaint.

the claims as to the named plaintiffs (Amended Complaint ¶¶ 285-87). The complaint further alleges that plaintiffs will fairly and adequately represent the interests of the class, and that they are represented by attorneys employed by and working in cooperation with the ACLU Foundation, which has extensive experience in litigating federal court class action cases involving federal civil rights claims (*Id.* ¶ 288).

### C.    Relief Requested

As to the First, Second, Third, Fifth and Sixth Claims for Relief, the Amended Complaint seeks only declaratory and injunctive relief, and not damages (*Id.* ¶¶ 290-92, 300, 308, 316, 328 and 335). However, neither the declaration sought, nor the contours of the requested injunctive relief, are set forth in the Amended Complaint. The Complaint also seeks attorney's fees. (*Id.* ¶ 337).

With respect to the Fourth Claim for Relief, the Amended Complaint seeks the imposition of a statutory fine in favor of Plaintiiff Hogue, pursuant to C.R.S. §16-3-404, of not less than $100 or more than $1000 due to the interference with attorney communications.[7] (*Id.* ¶ 320).

## II.    PLAINTIFFS' MOTION TO CERTIFY AND DEFENDANTS' RESPONSES

---

[7] C.R.S. § 16-3-404 provides, in pertinent part: "All peace officers or persons having in custody any person committed, imprisoned, or arrested for any alleged cause shall forthwith admit any attorney-at-law in this state, upon the demand of the prisoner . . . to see and consult the person so imprisoned, alone and in private, at the jail or other place of custody. . . . (2) Any peace officer or person violating the duty imposed by this section or section 16-3-403 shall forfeit and pay not less than one hundred dollars nor more than one thousand dollars to the person imprisoned or to his attorney for the benefit of the person imprisoned, to be recovered in any court of competent jurisdiction."

## A.     Plaintiffs' Argument

Plaintiffs' amended motion for class certification (Dkt. # 7) argues initially that a plaintiff class is necessary because prisoners in the Garfield County Jail are short-term detainees, stating that the average length of detention is less than one month. Because very few prisoners stay in the jail more than a year, plaintiffs argue it is extremely unlikely that any one prisoner will remain in the jail long enough to litigate a claim for injunctive and declaratory relief until final judgment. Citing to Tenth Circuit precedent, plaintiffs contend that a prisoner's individual claim for prospective injunctive relief will become moot upon the prisoner's release from jail. *See, e.g.*, *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997). Thus, unless a class is certified, the policies and practices of the County Jail may be effectively immunized from judicial scrutiny when the named plaintiffs are released.

Further, plaintiffs argue the following questions of fact are common to all members of the putative class:

> a. Whether defendants have failed to adopt a written policy governing use of force within the Detention Division?
>
> b. Whether defendants have failed to adopt written policies governing their deputies' use of the restraint chair, the pepperball gun, tasers, and the electroshock belt?
>
> c. Whether defendants' written policy on the use of pepper spray fails to provide adequate guidance to prevent violations of prisoners' constitutional rights?
>
> d. Whether defendants have failed to ensure adequate training of their deputies on the proper and improper use of force, including the restraint chair, the pepperball gun, pepper spray, tasers, and/or the electroshock belt?

e. Whether defendants have failed effectively to monitor and supervise their deputies' use of force, including the restraint chair, the pepperball gun, pepper spray, tasers, and/or the electroshock belt?

f. Whether the acts and omissions of defendants and their deputies with regard to the use of force, including the restraint chair, the pepperball gun, pepper spray, tasers, and/or the electroshock belt, pose an unreasonable risks of harm to prisoners' health, safety, welfare, and constitutional rights?

g. Whether prisoners are receiving adequate mental health care for their serious mental health needs?  (Plaintiff's Motion at 5-6.)

In addition, plaintiffs assert that the following questions of law are common to the entire putative class, whether pretrial detainees or convicted prisoners:

a. Whether the alleged policies and practices and alleged acts and omissions of defendants exhibit deliberate indifference to the risk that deputies will violate prisoners' rights under the Eighth and Fourteenth Amendments and Article II, Sections 20 and 25 of the Colorado Constitution?

b. Whether the alleged policies and practices and alleged acts and omissions of defendants pose unreasonable risks of harm to prisoners' health, safety, and welfare, in violation of the Eighth and Fourteenth Amendments and Article II, Sections 20 and 25 of the Colorado Constitution?

c. Whether defendants' policy regarding attorney visits violates the constitutional and statutory rights of prisoners?

d. Whether defendants are deliberately indifferent to prisoners' serious mental health needs?  (*Id.* at 7-8).

Plaintiffs identify the following questions of law common to the pretrial detainees:

a. Whether pretrial detainees are at risk of being subjected to the use of excessive and disproportionate force that violates their rights under the Due Process Clause of the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution?

b. Whether the alleged practices and policies with regard to the use of the

electroshock belt inflict unconstitutional punishment that is not reasonably related to any legitimate governmental objective, in violation of both the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution?

c.  Whether the alleged practices and policies with regard to the use of the restraint chair inflict unconstitutional punishment that is not reasonably
related to any legitimate governmental objective, in violation of both the procedural and substantive components of the Due Process Clause of the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution?

d. Whether defendants impose punishment for alleged disciplinary violations without due process of law?  (*Id.* at 8-9).

Plaintiffs identify the following questions of law as common to the convicted

inmates:

a. Whether the alleged policies and practices and defendants' acts and omissions threaten to subject convicted prisoners to wanton and unnecessary infliction of physical or mental pain, in violation of the Eighth Amendment and Article II, Section 20 of the Colorado Constitution?

b. Whether convicted prisoners retain a liberty interest in freedom of bodily movement, protected by the Due Process Clause and Article II, Section 25 of the Colorado Constitution, that is infringed by fully-immobilizing restraints such as the restraint chair?

c. Whether the alleged practices and policies and defendants' acts and omissions with regard to the use of the restraint chair violate and threaten to violate the rights of convicted prisoners under the Due Process Clause and Article II, Section 25 of the Colorado Constitution?

d. Whether convicted prisoners retain a liberty interest, protected by the Due Process Clause and Article II, Section 25 of the Colorado Constitution, in freedom from the conditions of confinement imposed by being forced to wear the electroshock belt?

e. Whether the alleged practices and policies and defendants' acts and omissions with regard to the use of the electroshock belt violate and

threaten to violate the rights of convicted prisoners under the Due Process Clause and Article II, Section 25 of the Colorado Constitution?

f. Whether deprivations imposed as punishment for alleged disciplinary infractions are atypical and significant deprivations in light of the normal incidents of incarceration in the Garfield County Jail?

g. Whether defendants impose disciplinary sanctions that deprive convicted prisoners of liberty interests without due process of law? (*Id.* at 9-10).

Plaintiffs contend that the injuries and threatened injuries detailed in their Amended Complaint, both those of the named plaintiffs and those of the putative class, stem from the policies and procedures, acts and omissions of the defendants, and that even if these plaintiffs were released from the jail the conduct would continue and could not be challenged. Thus, they argue, controlling questions of fact and law in this case are common to the entire class, or are common to either the pretrial detainees or the convicted inmates.

Plaintiffs' motion asserts "typicality" of their claims, however, in only the most general way, stating that all of the plaintiffs are "at risk of being subjected to the use of force, including the use of restraint chairs, pepperball guns, tasers, pepper spray and/or the electroshock belt, in a manner that violates their constitutional rights." (Plaintiffs' Motion at 11). Defendants argue the motion does not expressly assert that all or any of the four named plaintiffs has actually been subjected to any of the punitive measures referenced in the complaint. However, the Amended Complaint does specify the punitive measures and treatment to which each plaintiff has allegedly been subjected.

### Plaintiff Vandehey

The Amended Complaint details Plaintiff Vandehey's requests for mental health treatment and the jail's denial of same (Amended Complaint ¶¶ 118-27), and specifically alleges the use of disproportionate force and restraints upon him, including being strapped into the restraint chair at least seven times, being shot with a pepperball gun on two occasions, being taunted and threatened with the use of the taser, and being forced to wear the electroshock belt many times (*Id.* ¶¶ 128-39).

### Plaintiff Langley

The Amended Complaint details Plaintiff Langley's requests for mental health treatment and the jail's denial of same (*Id.* ¶¶ 140-49), and specifically alleges the use of disproportionate force and restraints upon him, including being strapped into the restraint chair at least five times, being taunted and threatened with the use of the taser, pepper spray and the pepperball gun, and being forced to wear the electroshock belt on multiple occasions (*Id.* ¶¶ 150-52).

### Plaintiff Lincoln

The Amended Complaint details Plaintiff Lincoln's requests for mental health treatment and the jail's denial of same (*Id.* ¶¶ 153-54), and specifically alleges the use of disproportionate force and restraints upon him when he was housed at the jail as a pretrial detainee, including being subjected to the pepperball gun, the restraint chair and the electroshock belt, and being threatened with the use of the taser and pepper spray (*Id.* ¶ 155).  The Complaint also relates in detail an incident in January 2006 when he was subjected to the pepperball gun in a manner that allegedly endangered

his health (*Id.* ¶¶ 156-63).  Plaintiff Lincoln separately alleges that he was subjected to assignment in the county jail at what he refers to as "supermax" status without justification (*Id.* ¶ 164).

### Plaintiff Hogue

Plaintiff Hogue's allegations of excessive force arise primarily from an incident that occurred in February 2006 when a prison guard apparently suddenly ordered a "total lockdown," and deputies in the sheriff's department began using pepper spray and the pepperball gun (*Id.* ¶¶ 165-72).  On this occasion, Plaintiff Hogue witnessed a prisoner subjected to the taser gun, but was not himself a victim (*Id.* ¶ 172), although it appears that Plaintiff Hogue was exposed to pepper spray and on another occasion was forced to wear the electroshock belt (*Id.* ¶¶ 173-74).  The Amended Complaint does not allege that this plaintiff was subject to the other disciplinary measures discussed above, or to disciplinary measures at all other than on these occasions.  On the other hand, this plaintiff alleges what appears to be the primary basis of the claim that defendants interfered with communications with attorneys (*see* Amended Complaint ¶¶ 226-34), and it is this plaintiff who seeks the statutory fine mentioned above.  The Amended Complaint details other occasions where communications between plaintiffs and their attorneys were made difficult, but it is not clear that the communications were actually prohibited (*Id.* ¶¶ 235-37).

### B.    Defendants' Response

Defendants' response relies heavily on the three decisions in *Shook v. Board of County Com'rs of County of El Paso*, 216 F.R.D. 644 (D. Colo. 2003) ("*Shook 1*")

(denying class certification), reversed and remanded by *Shook v. El Paso County*, 386 F.3d 963 (10th Cir. 2004) ("*Shook 2*"), and *Shook v. Board of County Com'rs of County of El Paso,* 2006 WL 1801379 (D. Colo. 2006) ("*Shook 3*") (again denying class certification after remand).

In *Shook 1*, Judge Richard P. Matsch denied certification of a putative plaintiff class of inmates, defined as "all persons with serious mental health needs who are now, or in the future will be, confined in the El Paso County Jail," and alleging deliberate indifference by the defendants to those health needs.  216 F.R.D. at 645. The plaintiffs there, like plaintiffs here, sought only declaratory and injunctive relief, and not damages.  *Id.* at 646.

Although he discussed the Rule 23 factors, Judge Richard P. Matsch appeared to have based his ruling primarily on his concern with the breadth of the relief sought by the plaintiffs and his view that he could not fashion prospective injunctive relief for the putative class in accordance with the provisions of the PLRA, 18 U.S.C. § 3626(a)(1)(A),[8] or at least that is how the Tenth Circuit perceived his ruling.[9]

---

[8] This statute provides: "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  18 U.S.C. § 3626(a)(1)(A).

[9] The Tenth Circuit described Judge Matsch's ruling as concluding that "the PLRA limited the federal court's ability to address such a complaint.  Since it concluded that under the PLRA it could neither 'prescribe jail practices for humane treatment of prisoners' nor interfere with the executive and legislative branches' ability to structure prisons as they saw fit, the relief the plaintiffs sought was 'beyond the competence and the jurisdiction of [the] court.'"

The Tenth Circuit reversed the denial of class certification, stating that "[t]he question for us, then, is whether courts may consider the relief the prisoners seek in determining whether to certify a class under the PLRA. Our review of the PLRA leads us to conclude that it does not limit class certification decisions in this way." 386 F.3d at 969. Having held that the PLRA does not add new elements to the class certification analysis, the court stated that Rule 23 remains the appropriate analytical framework for class certification questions. *Id.* at 971.

In discussing the application of Rule 23, the Tenth Circuit reiterated its previous holding that "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* (quoting *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982) (quotation marks omitted). It further stated that "nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* Accordingly, under *Shook 2* I may not deny class action status soley because of the limitations of the PLRA, and in applying Rule 23 I may not make a preliminary determination of the merits of plaintiffs' claims. The Tenth Circuit found that Judge Matsch erred by denying class certification without addressing Rule 23(a)'s threshold requirements or assessing Rule 23(b)(2)'s requirement of general applicability. *Id.* at 974. The court remanded the case to Judge

---

386 F.3d at 969.

Matsch for further consideration of the prisoners' complaint, stating that it expressed no view on the ultimate decision of whether to certify a class. *Id*.

On remand, in the case referenced above as *Shook 3*, Judge Matsch applied the Rule 23 factors and again entered an order denying class certification. *Shook v. Board of County Com'rs of County of El Paso,* 2006 WL 1801379 (D. Colo. June 28, 2006). That decision is on appeal to the Tenth Circuit, case number 06-1454, but has yet to be decided.[10] In opposing the motion for class certification in the instant case, defendants have argued that the Rule 23 factors are not satisfied here.

### Rule 23(a)

Defendants contend that the class should not be certified because the definitions of the class are over inclusive and extend to actual and potential prisoners with no justiciable claim, there are no questions of fact or law common to all members of the classes, the claims of the named plaintiffs are not typical, and the proposed class representatives are not adequate representatives of the entire class (Defendants' Response 7-25).

Defendants' argument as to the criteria under Rule 23(a) appears to boil down to the following essential points, which are made repeatedly in their response as to each of the Rule 23(a) criteria.[11]

---

[10] Oral argument was heard on January 23, 2008.

[11] Defendants have submitted an affidavit from Defendant Dawson in support of some of their factual assertions. *See* Exhibit A-2 to Response.

First, defendants argue that not every inmate in the Garfield County Jail has been subjected to the various punitive disciplinary means alleged by the named plaintiffs, nor have they been denied mental health treatment or denied visitation with counsel. In fact, defendants argue, most inmates comply with orders issued to them so that the use of disciplinary devices is not necessary (Defendants' Response at 13, 15; Affidavit of Dawson, ¶ 6). Thus, defendants argue, plaintiffs' claims do not involve common questions of fact with respect to all inmates, nor do they satisfy the requirements of typicality or numerosity.

Second, defendants argue that not even the named plaintiffs have been exposed to application of the various disciplinary devices described in the complaint. For example, with respect to the electroshock belt, defendants correctly state that none of the named plaintiffs claim the belt has actually been discharged while they were wearing it. In fact, defendants contend, the belt has never been activated.[12] (*See* Affidavit of Dawson, ¶ 7). Defendants also point out that no named plaintiff alleges the taser has actually been discharged against him, but only that he has been "threatened" with the use of such device. Defendants argue that the threat to use disciplinary measures is not sufficient to constitute an actionable injury (Defendants' Response at 19-20).

_____

[12] In *Hawkins v. Comparet-Cassani*, 33 F. Supp. 2d 1244 (C.D. Cal. 1999), the district court certified a class of all persons in the custody of the Los Angeles County Sheriff who are appearing in state court and **may be subjected** to use of the stun belt. *Id.* at 1260 (emphasis added). The court found common issues of law and fact because "the issue is whether using stun belts is a per se constitutional violation." *Id.* at 1259. On appeal, the Ninth Circuit reversed the class certification, but only because it found that plaintiff, a convicted prisoner, could not represent pretrial detainees, and remanded for determination of an appropriate subclass or appointment of another representative. *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001).

They further argue that Plaintiff Langley, who is a convicted prisoner, cannot adequately represent the pretrial detainees, and conversely that the named plaintiffs who are pretrial detainees (Vandehey, Lincoln and Hogue) cannot adequately represent a proposed class of convicted prisoners.

With respect to the Fifth Claim for Relief, defendants argue there is no evidence that the population of inmates with "serious mental health needs" is too numerous to permit joinder, or that there is any evidence of a systematic denial of access to mental health treatment. With respect to the allegations that there is a lack of policies or procedures regarding the use of disciplinary measures, defendants argue that the absence of policies does not give rise to a constitutional violation, and in any event there is no identified deficiency of policies applicable to every current and future inmate at the jail; thus, commonality is lacking. With respect to the alleged attorney visitation policy, defendants assert the complaint lacks allegations of a single application of the policy to actually deny counsel visitation, other than with respect to Plaintiff Hogue, and in his case, defendants assert, the policy was erroneously misapplied (Defendants' Response at 10-11). In the absence of a constitutionally infirm policy applied across-the-board to all members of the putative class, argue defendants, certification is not warranted.

### Rule 23(b)(2)

Defendants further contend that this case cannot proceed as a class action under Rule 23(b)(2) because plaintiffs have not specified the injunctive or declaratory relief they seek, and this Court cannot determine whether or not the remedy being sought is

equally applicable to all members of the putative class consistent with this rule. Defendants argue, as was true in *Shook 3*, that given the systemic deficiencies alleged by plaintiffs, any conceivable injunctive or declaratory relief would have to be so broad as to violate the injunction limitations of the PLRA.

Of course, as the Tenth Circuit held in *Shook 2*, considerations under the PLRA do not supplant analysis of the Rule 23 considerations. Nonetheless, defendants argue, whether the use of a particular disciplinary device with a particular prisoner comports with the requirements of the Eighth Amendment must be evaluated on the basis of individual circumstances, and if a violation occurred, a remedy to address the harm suffered by the affected prisoner may be fashioned. But, defendants argue, an overall rule or prohibitive injunction would be difficult to fashion.

Defendants further argue that the court may consider, pursuant to Rule 23(b)(2), whether the plaintiffs' claims are manageable as a class action, citing to *Shook 2*, 386 F.3d at 973. Defendants argue that the proposed class action here would be unmanageable due to the highly particularized claims of the individual plaintiffs, stating that the inquiry into each of these claims is highly fact-specific and in some instances varies depending on whether the class member is a convicted prisoner or a pretrial detainee (Defendants' Response at 28-29).

Finally, defendants argue that they will need discovery on the issue of numerosity, arguing such discovery may reveal that the number of inmates that have, in fact, been subjected to the abuses alleged in the complaint is actually quite small so as to fail the numerosity requirement (*Id.* at 30). This argument, however, appears to

assume that an inmate who is merely threatened with the disciplinary measures, but who has not actually encountered them, cannot be a member of the class.

The defendants supplemental response brief (Dkt. # 111), filed February 12, 2008, repeats many of the arguments described above, but for the first time argues that plaintiffs' claims, and presumably the motion to certify a class, have been mooted because all four of the named plaintiffs have been released from the Garfield County Jail. Plaintiffs moved to strike the supplemental response as untimely filed and in violation of this Court's practice standards (Dkt. # 112). While I agreed with plaintiffs' position regarding the procedural deficiencies in the filing of the supplemental brief, I denied the motion to strike and allowed the plaintiffs to file a response to the supplemental brief (Dkt. # 115). Plaintiffs' response was timely filed.

## III. ANALYSIS

### A. Mootness

Citing to *Clark v. State Farm Mutual Automobile Insurance Co.*, 245 F.R.D. 478 (D. Colo. 2007), and other cases, defendants argue in their supplemental response that this case is moot, and presumably so is the motion to certify the class, because all four of the named plaintiffs have been released from the Garfield County Jail since the filing of the Amended Complaint and while the motion to certify a class was pending. *Clark*, however, actually states that when a plaintiff's claim is moot, it makes him "presumptively—though not conclusively—inadequate [as a class representative] unless the defendant has procured the mootness of the plaintiff's claim as part of its underlying strategy." 245 F.R.D. at 485. I do not not find that defendants here procured the

release of plaintiffs as part of a strategy to moot this case, but do find that the presumption of mootness does not apply here.

Instead, the instant case fits the framework discussed in *Milonas v. Williams*, 691 F.2d 931, 937 (10th Cir. 1982), where the court stated:

> [A] named plaintiff may continue to represent a class that has been certified as such even after the named plaintiff's personal stake in the outcome of the litigation has been mooted. *Sosna v. Iowa*, 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975). Furthermore, "(t)here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion." *Id.* at 402 n.11, 95 S.Ct. 559 n.11. In such instances, the district court may apply a "relation back" theory and grant late certification in an otherwise moot case and thereby prevent mootness. *Id.*

*Id.* I find that, in the instant case, the controversy is one that could become moot before I could reasonably be expected to rule on the class certification motion. As the named plaintiffs were inmates in a county jail, the duration of their confinement there was naturally expected to be short-term. As stated by defendants, and not disputed by plaintiffs, named plaintiffs Vandehey and Langley were released by October 2006, named plaintiff Hogue was released by November 2007, and named plaintiff Lincoln apparently had not been housed at the Garfield County Jail since April 2006 (*see* Supplemental Brief at 2-4). Given the timing of the motion for class certification, it is unlikely that a determination could have been reached before plaintiffs (or some of them) were released, even if Judge Figa had been physically capable of conducting such a hearing.

More significantly, *Milonas* cites to the Supreme Court's decision in *Gerstein v. Pugh*, 420 U.S. 103 (1975), a case which involved a fact pattern quite similar to the instant case. In *Gerstein*, pretrial detainees were released from the county jail before their constitutional claims could be litigated and before they could be certified for class status. The Supreme Court stated, albeit in a footnote, as follows:

> At oral argument counsel informed us that the named respondents have been convicted. Their pretrial detention therefore has ended. This case belongs, however, to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. *See Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly 'capable of repetition, yet evading review.'

> At the time the complaint was filed, the named respondents were members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under *Sosna*. But this case is a suitable exception to that requirement. See *Sosna*, supra, 419 U.S. at 402 n.11, 95 S.Ct. at 559 n.11; cf. *Rivera v. Freeman*, 469 F.2d 1159, 1162-1163 (CA9 1972). The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case.

420 U.S. at 110 n.11.  Thus, while *Sosna* held that rendering the named plaintiff's claim moot after the certification of a class does not defeat jurisdiction, *Gerstein* appears to hold that, even if the action that renders the case moot occurs before class certification, the case may proceed as a class action under the narrow exception as a case where the claim is "capable of repetition yet evading review."

I find that this case, like the situation in *Gerstein*, is one in which the release of pretrial detainees during the pendency of their motion to certify the class does not defeat this court's jurisdiction to decide that motion or preclude me from certifying the case as a class action because plaintiffs had a live interest in the claims advanced at the time they filed their motion.  Therefore, the claims relate back to that time, and, because the policies and practices are alleged to be ongoing at the Garfield County Jail, there continue to be inmates at the Garfield County Jail who are members of the putative class who have a live stake in this controversy.  See *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) and *County of Riverside v. McLaughlin* 500 U.S. 44, 51-52 (1991).[13]  It may be, as suggested in *Geraghty*, that additional plaintiff representatives should be added to the complaint.  But at this stage I will not find that due to the named plaintiffs' release from custody this case is moot.

---

[13] In *Lusardi v. Xerox Corp.*, 975 F.2d 964, 977 (2d Cir. 1992), a case upon which defendants rely, the Second Circuit interpreted *Geraghty*'s relation back doctrine as follows: "the named plaintiff has the requisite personal stake in class certification only if (1) he has a live individual claim when the district court decides the class certification issue, or, at the very least, he had a live claim when he filed for class certification . . . "  As noted, here plaintiffs had a live claim when they filed for class certification.

Defendants have also argued that since the filing of the Amended Complaint they have instituted a mental health program for the inmates, thus rendering a class action claim unnecessary or moot (Defendants' Supplemental Response at 5). Plaintiffs have responded that they are not in a satisfactory position to evaluate the asserted implemented plan (Plaintiffs' Supplemental Response at 3-4). To deny a class on the basis of such an assertion by defendants would improperly prejudge the plaintiffs' claims and this Court declines to do so.

On the other hand, it does appear that, if this case does not proceed as a class action, it would be mooted by the release from custody of the four named plaintiffs. As the Tenth Circuit held in *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997), an individual inmate's claims for injunctive and declaratory relief as to the conduct of prison officials becomes moot if the inmate is no longer within the control of the prison. However, once a class has been certified, mooting of the class representative's claims does not moot the entire action because the class "acquire[s] a legal status separate from the interest asserted [by its named plaintiff]." *Sosna*, 419 U.S. at 399. The danger of mootness of these claims cuts in favor of class certification here. Nonetheless, whatever policy concerns may favor class certification, the factors of Rule 23(a) and (b) must be considered.

### B.    Application of Rule 23

Although the party seeking to certify a class bears the burden of proving that all the requirements of Rule 23 are met, the district court must engage in its own rigorous analysis of whether the prerequisites of Rule 23(a) have been satisfied. In doing so, the

court must accept the substantive allegations of the complaint as true, although it need not blindly rely on conclusory allegations which parrot Rule 23 and may consider the legal and factual issues presented by plaintiffs' complaint. *Shook 2*, 386 F.3d at 968 (citations and internal quotations omitted).

Rule 23(a) provides that a case may proceed as a class action only if the four elements of that rule are satisfied, namely numerosity, commonality, typicality and adequacy of the named parties to represent the class. *Id.* If the prerequisites of Rule 23(a) are met, the court must then look to the category of class action under Rule 23(b) for additional prerequisites involving certification of a class. *Id.* Here, plaintiffs assert only that this case meets the prerequisites of Rule 23(b)(2), namely that defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole.

**Analysis under Rule 23(a)**

**1. Numerosity**

Plaintiffs contend that the numerosity requirement is met, and that joinder is impracticable here with respect to all six of their claims for relief, primarily because the putative class is fluid and future inmates cannot be identified given that as many as 150 prisoners pass through the county jail each day (Amended Complaint ¶ 285). In *Skinner v. Uphoff*, 209 F.R.D. 484 (D. Wyo. 2002), Judge Clarence Brimmer conditionally certified a class consisting of 700 inmates then confined in the Wyoming State Penitentiary and any persons who will be confined in the future, stating that the proposed class is sufficiently numerous. The court stated that, since the proposed class

included individuals who will be confined in the future, they were necessarily unidentifiable and therefore joinder was impracticable. *Id.*

Defendants' argument against numerosity in the instant case, at least as to the First, Second and Third Claims for Relief, appears to rely mainly on their argument that neither the plaintiffs, nor any members of the putative class, have been subjected to actual shock by the Nova Belt or the infliction of the taser (Defendants' Response at 8-9). They do not appear to argue that the other disciplinary devices have not been used against plaintiffs, but rather appear to contend that here is no singular policy with respect to the use of such devices that is applied to numerous inmates or which could be the subject of injunctive relief (*Id.* at 10-11).

Defendants' position appears to be based on the mistaken belief that the threat of harm, as opposed to the actual infliction of harm, is not sufficient to raise an Eighth Amendment claim. However, as the Supreme Court has held, prison and jail officials violate the Eighth Amendment when, acting with deliberate indifference, they subject prisoners to a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The threatened harm need not be imminent. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("We have great difficulty agreeing that prison authorities . . . may ignore a condition of confinement that is sure or very likely to cause serious illness (second hand cigarette smoke) and needless suffering [in the future]."). For purposes of injunctive relief, the threatened harm need never materialize; it is the substantial risk of harm that violates the Eighth Amendment and entitles the plaintiffs to injunctive relief. "[I]t would be odd to deny an injunction to inmates who plainly proved an unsafe,

life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id.*

Likewise, the Tenth Circuit has stated that "an inmate does have a right to be reasonably protected from constant threats of violence and sexual assault from other inmates. . . . Moreover, he does not need to wait until he is actually assaulted before obtaining relief." *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980). *See also Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985) (finding constitutional violation in prisoners being subjected to constant threat of violence and sexual assault, and rejecting contention that plaintiff must actually be assaulted before obtaining relief).

What plaintiffs have alleged in the First, Second and Third Claims is not merely an excessive use of force against any one or a number of inmates, but rather policies or practices employed generally throughout the Jail, or a lack of such policies and practices, such that all inmates are subject to a substantial risk of harm from improper or excessive force. Whether plaintiffs can ultimately prove such a claim remains to be seen, but I cannot evaluate the merits of the claim at this stage of the case. Rather, I may only consider whether the number of pretrial detainees and inmates at the Jail who are subject to the alleged practices is so numerous as to render joinder impracticable. As to the first three claims for relief, I find that the requirement of numerosity is satisfied given the fluid and transitory nature of the putative class.

As to the Fourth Claim for Relief, defendants argue that Plaintiff Hogue is the only inmate who was allegedly harmed by the supposed policy regarding attorney access (Defendants' Response at 8). Plaintiffs' counsel stated at the hearing that the

alleged policy consists of asking inmates a "trick question," namely, "who is your attorney?" When the inmate answers by providing the name of his public defender, the inmate is denied access to the ACLU attorneys seeking to represent him in this civil case. Plaintiffs' counsel asserted that this occurred on more than one occasion, but the anecdotal evidence provided by counsel does not satisfy me that joinder of those who may have been subject to this purported practice is impracticable. Accordingly, I find that the numerosity requirement is not met with respect to the Fourth Claim for Relief.

I note, however, that the individual claim of Plaintiff Hogue as contained in the Fourth Claim for Relief does remain in the case. The claim is not mooted by his release from the Garfield County Jail, as he is seeking damages pursuant to C.R.S. §16-3-404.[14]

As to the Fifth Claim for Relief, defendants argue there is no evidence that the population of jail inmates with serious mental health needs is too numerous to permit joinder (Defendants' Response at 9). Plaintiffs, on the other hand, assert that the inmate population in any institution is recognized to have a large percentage of inmates with serious mental health needs. Although the number of inmates with serious mental health needs cannot be quantified precisely, I find that the numerosity requirement is satisfied with respect to the Fifth Claim for Relief, particularly given the information set forth in Exhibits 17, 18 and 19 attached to Plaintiffs' Supplemental Brief.

---

[14] In their supplemental brief submitted on February 12, 2008, defendants suggested that plaintiff Hogue no longer wishes to participate in this suit, attaching a handwritten note apparently signed by him on October 18, 2007 (Exhibit B to Dkt. # 111). Plaintiffs have supplied an affidavit signed by Plaintiff Hogue dated February 21, 2008 (Exhibit 1 to Plaintiffs' Supplemental Brief), indicating that he did not intend by his October 18 note to "drop out of the lawsuit." Id at ¶ 7. I accept Plaintiff Hogue's affidavit as indicative of his desire to continue his participation in this case.

As to the Sixth Claim for Relief, defendants do not make a specific argument as to numerosity, other than to state that there is no express showing as to how many inmates have been disciplined without the due process alleged to be required. However, as I now understand this claim, plaintiffs are alleging that the Jail has no policies in connection with disciplinary infractions that meet the minimum requirements established by *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974), and its progeny. According to that theory, all inmates in the jail are subject to the lack of constitutional protections, and a showing of a specific number of inmates who have not received the protections is not required. Again, whether the plaintiff can prove this claim remains to be seen, but at this stage of the case I find that the numerosity requirement is satisfied with respect to the Sixth Claim for Relief.

## 2. Definition of Class

Defendants additionally argue, citing to *Shook 3*, that the definition of the proposed class is overbroad. However, as plaintiffs point out, the definition of the class they propose is quite similar to the definition of the class approved for certification in *Ramos v. Lamm*, 639 F.2d 559, 562 (10th Cir. 1980) ("all persons who are now or in the future may be incarcerated in the maximum security unit of the Colorado State Penitentiary at Canon City, Colorado"), and a class certified by Judge Lewis T. Babcock in *Neiberger v. Hawkins*, 208 F.R.D. 301, 314-18 (D. Colo. 2002) ("all adult patients who are now or in the future will be involuntarily committed to the Institute of Forensic

Psychiatry ('IFP') of the Colorado Mental Health Institute at Pueblo ('CMHIP')").[15]

Defendants do not distinguish these two cases. While in *Shook 3* Judge Matsch did find

a similar class definition to be overbroad, I do not agree with his reasoning there and

note that the decision is again on appeal before the Tenth Circuit. I find that the

definition of the proposed class is not overbroad.

### 3. Common questions of fact

As noted above, plaintiffs identify eight common questions of fact. Three of those

questions relate to defendants' policies regarding use of the disciplinary devices, or lack

thereof, and two relate to the alleged failure to provide adequate training or supervision

of the deputies' use of the disciplinary devices. Defendants argue that the absence of a

written policy does not constitute a fact common to the entire class (Defendants'

Response at 13), and that the other alleged common facts simply relate to isolated

incidents that do not apply to "every single inmate at the jail." (*Id.* at 14).

However, one common question of fact alleged by plaintiffs is whether the acts

and omissions of defendants with respect to the disciplinary devices "pose

unreasonable risks of harm to prisoners' health, safety, welfare and constitutional

rights?" A second question of fact asserted to be common is whether inmates are

receiving adequate mental health care for their serious mental health needs? (Plaintiffs'

_____

[15] The relief requested in this case consisted of declaratory and injunctive relief for
violation of Colorado's Care and Treatment of the Mentally Ill Act, C.R.S. § 27-10-101, without
any request for damages. 208 F.R.D. at 307. The complaint apparently also sought
declaratory relief that defendants violated regulatory standards promulgated pursuant to the
Act, as well as under 42 C.F.R. § 482 et seq., and Title V of the Public Health Services Act, 42
U.S.C. § 290ii, which relate in part to prohibiting the use of restraint devices. *Id.* at 309-10.

Amended Motion at 6). Although defendants argue, as noted above, that the threat of harm is not sufficient to raise a constitutional concern, I have already determined that plaintiffs have the better argument here. Although defendants assert that whether an inmate is receiving adequate mental health care is a particularized question dependent on the inmate's mental condition, here the issue is whether any mental health care at all is being provided.

As stated by Judge Babcock in *Neiberger, supra*, Rule 23(a)(2) does not require that all the questions of law or fact raised by the dispute be common, nor does it establish any quantitative or qualitative test of commonality. Rather the existence of significant common legal or factual issues is enough to satisfy Rule 23(a)(2)'s threshold commonality requirement. 208 F.R.D. at 315. Or, as stated by Judge Matsch, "[t]his prerequisite is met if there is single issue of law or fact common to the class." *Shook 3*, 2006 WL 1801379, at * 9 (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)). At least the above two questions regarding the risk of substantial harm from the disciplinary measures and the absence of any mental health care appear to satisfy the commonality requirement here.

### 4. Common questions of law

Plaintiffs have identified at least four questions of law purportedly common to all the putative class members and at least four questions of law purportedly common to the members of the putative subclasses.

Defendants argue not one of the identified questions of law is common to all putative class members, since not all members have been, or are imminently likely to

be, subjected to the use of compliance devices (Defendants' Response at 15). But again, this argument ignores that plaintiffs' allegations relate to the threatened use of such devices, and the policies and practices related to such use, and not necessarily the actual use of such devices.

Defendants also argue that the Tenth Circuit decision in *Hart, supra*, stands for the proposition that the commonality requirement cannot be satisfied by generalized allegations of systematic violation of various laws, citing to 186 F.3d at 1289 (Defendants' Response at 16-17). While it is true that the court made a statement to that effect in *Hart*, as plaintiffs here point out, the holding of the case was merely that the district court did not abuse its discretion in finding that the plaintiffs failed to demonstrate a single issue of law common to all class members (Plaintiffs' Reply at 22-24). While the Tenth Circuit held that the allegations of systematic violation of various laws does not "automatically" meet Rule 23(a)(2), it also emphasized that the district court retained discretion to determine commonality. 186 F.3d at 1289. *Hart* thus does not appear to have a determinative effect on the case at bar. I find that there are common questions of fact and law relating to the claims of all putative class members such that Rule 23(a)(2) is met.

### 5. Typicality

Defendants' argument that the typicality requirement is not met is again based on their assertions that, since plaintiffs have not been subject to discharge of the taser gun or the Nova Belt, they cannot show that they suffered the same type of harm as that of the putative class (Defendants' Response at 19). But this argument overlooks the fact

that plaintiffs' complaint relates to the threat to use such devices, and the lack of policies with respect to such use, rather than the particular application of such devices to the class members. Moreover, as stated in *Neiberger, supra*, "[s]o long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied. The circumstances of the named plaintiffs and the potential class members do not have to be identical." 208 F.R.D. at 315 (citation omitted). I find that the named plaintiffs' claims are typical of the putative class members as to all claims, with the exception of the Fourth Claim.

With respect to the Fourth Claim for Relief, alleged denial of access to counsel, defendants correctly point out that only Plaintiff Hogue has alleged actual denial of access, and thus the claims of the other three plaintiffs are not typical. As I have already found, the circumstances of Plaintiff Hogue's claim regarding his counsel's visit do not appear to have been repeated, much less are they typical of what has occurred with other inmates. Accordingly, I find that the typicality requirement is not met as to the Fourth Claim for Relief.

With respect to the Fifth Claim for Relief, alleged denial of access to mental health care, it appears from the Amended Complaint that only plaintiff Langley is alleged to be a typical plaintiff (*See* Amended Complaint ¶ 325).[16] Defendants correctly argue, in part as set forth by Judge Matsch in *Shook 3*, that whether an inmate has been

---

[16] The allegations in paragraphs 195 through 200 of the Amended Complaint relate to the denial of mental health treatment with respect to plaintiff Vandehey, but he is not expressly named in the Fifth Claim.

denied access to mental health care in violation of the Eighth Amendment is a particularized determination that may not lend itself to satisfying the typicality requirement. However, as noted above, I now understand this claim to allege that there is no mental health treatment available to **any** of the inmates in the Jail, such that any inmate's particularized needs do not determine whether or not he gets treatment. Accordingly, a denial of mental health treatment to Plaintiff Langley, based on the absence of any mental health program, is typical of the denial to all other inmates seeking such treatment. Thus, the typicality requirement is met as to the Fifth Claim for Relief.

Moreover, to the extent plaintiffs allege that denial of mental health care to inmates who are unable to afford such treatment violates the Colorado statute, C.R.S. § 17-26-104.5,[17] that is certainly a question that lends itself to classwide determination and with respect to which Plaintiff Langley may be a typical plaintiff (*see* Plaintiffs' Reply at 27-28).

### 6. Adequacy of representatives

Defendants argue that the named plaintiffs cannot adequately represent the entire class, first repeating again their argument that none of the named plaintiffs has ever been subjected to activation of the Nova Belt. The flaw in this argument has been identified above and will not be repeated here.

---

[17] This statute provides, in pertinent part, that the county jail "may assess any such medical treatment charge against the person's jail account. . . . In no case shall a person's inability to pay be the basis for not providing medical treatment equivalent to the community standard of care." C.R.S. § 17-26-104.5(1).

Defendants next argue that Plaintiffs Hogue and Vandehey, the only named plaintiffs with respect to the Fourth Claim for Relief, are not adequate representatives because they have not suffered actual injury from the application of the jail's purported attorney visitation policy (Defendants' Response at 23-24). As noted above, I find that the numerosity and typicality requirements are not met here, and for the same reasons find that these named plaintiffs are not adequate representatives with respect to this claim.

Defendants next argue that the pretrial detainees cannot adequately represent a class including convicted prisoners, and vice versa. Although plaintiffs have argued that the standards for imposition of disciplinary measures may differ as between pretrial detainees and convicted prisoners, they argue here that, in the context of challenges to conditions of confinement, the Eighth and Fourteenth Amendments have equivalent standards, citing to *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, . . . the Eighth Amendment standard provides the benchmark for such claims. The Eighth Amendment requires jail officials to provide humane conditions of confinement by ensuring that inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.") (internal quotations and citations omitted). The *Craig* case involved the claims of pretrial detainees, yet the Tenth Circuit held that "[t]o hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective

component." *Id.* It thus appears that the standard of proof for violation of the Eighth Amendment does not differ as between pretrial detainees and convicted prisoners.

Defendants argue that Plaintiff Lincoln is not an adequate representative of a subclass of pretrial detainees because he is no longer confined in the Garfield County Jail. Apparently, as a pretrial detainee awaiting trial in Garfield County, Lincoln is sometimes held in the Garfield County Jail when he has been brought for hearings, but spends most of his time in the Mesa County Jail (*See* Amended Complaint ¶ 12). Plaintiffs argue this is a matter of standing, as opposed to adequacy of representation or mootness, and that Lincoln remains subject to the challenged policies and practices because he is certain to be returned to the Garfield County Jail. Plaintiffs also argue that his release from the Garfield County Jail does not moot his claims that arose while he was in the jail, citing *Milonas v. Williams*, 691 F.3d 931, 937 (10th. Cir. 1982) and the relation back theory discussed above. This argument, however, does not really address whether Plaintiff Lincoln can be an adequate representative of the pretrial detainees housed in the Garfield County Jail, since it appears that he is not there on a full-time basis. In any event, since plaintiffs have withdrawn their request for subclasses it is no longer necessary to reach this issue.

### Analysis under Rule 23(b)(2)

Defendants argue this case cannot proceed as a class action under Rule 23(b)(2) because it is not possible for me to fashion appropriate final injunctive relief or corresponding declaratory relief with respect to the putative class as a whole. This is so, they argue, because of the limitations of the PLRA as well as the asserted

prohibition against this court's entering an injunction prohibiting systematic constitutional violations.

On the other hand, plaintiffs correctly point out that the Tenth Circuit in *Shook 2* commented that courts have continued to allow prison condition cases to be certified as class actions so long as the elements of Rule 23 have been met, "even cases broadly challenging conditions of confinement." 386 F.3d at 970. The *Shook 2* decision cites several cases in which such certification has occurred.

Plaintiffs also cite cases from other districts where courts have certified classes seeking declaratory and injunctive relief to remedy systemic constitutional deficiencies. *See, e.g.*, *Hargett v. Baker*, 2002 WL 1433729, at *1 (N.D. Ill. 2002) (court certified class of plaintiff inmates, classified as "sexually violent persons (SVP)," who sought declaratory judgment that the conditions of confinement and mental health treatment of the SVPs violated the Fourteenth Amendment and a permanent injunction against the defendants compelling them to implement a plan correcting the alleged constitutional deficiencies in the current program for treatment of SVPs); *Hiatt v. County of Adams, Ohio*, 155 F.R.D. 605, 607-09 (S.D. Ohio 1994) (court certified a class defined as "all inmates housed in the jail at the time this lawsuit was filed and all inmates housed in the jail thereafter" who were challenging practices of the defendant jailers alleged in the complaint to be unconstitutional, including claims of: lack of classification, overcrowding, lack of sufficient inmate exercise facilities, lack of trained staff, inadequate medical care and staff, lack of mental health programs, lack of ventilation, lack of adequate plumbing,

basic sanitation and the general disrepair of the facility, problems of safety and security and lack of social service programs).

In addition, plaintiffs cite several cases where courts have certified classes of plaintiffs seeking injunctive relief regarding the use of restraints or other disciplinary devices (Plaintiffs' Reply at 34). For example, in *Von Colln v. County of Ventura*, 189 F.R.D. 583, 594 (C.D. Cal. 1999), the court certified a class of inmates only with respect to the injunctive portion of the case, defining the class as "all individuals who are currently incarcerated, or will be incarcerated during the pendency of this lawsuit in the . . . county jail and who are subject to be restrained in the Pro-straint chair in violation of the Eighth Amendment rights." The plaintiffs sought an injunction that would prohibit the use of the restraint chair "for purposes for which it was not designed." *Id.* at 587.

In denying class certification in *Shook 3*, Judge Matsch found that Rule 23(b)(2) could not be satisfied because the plaintiffs did not complain of "a written policy or standard procedure or practice to which all class members were subject." 2006 WL 1801379, at *11. He found that the plaintiffs contended that a number of separate incidents collectively showed administrative deficiencies amounting to deliberate indifference, but that such allegations did not support final injunctive relief with respect to the class as a whole. *Id.* He concluded that, while the PLRA did not add new elements to the class certification process, nonetheless its limitations on broad prospective relief could not be ignored. *Id.* at *12. Thus, he held, if the court did not

have the authority to grant the injunctive relief requested the purpose of proceeding as a class action was defeated.[18]

In the instant case, plaintiffs' Amended Complaint did not cite to any written policy or standard procedure or practice, but rather contended the fact that defendants' actions are not constrained by written policies, or operate only under unenforced oral policies, leads to the abuses alleged in the complaint (*see* Amended Complaint ¶¶ 2, 17, 26, 75, 87, 176-83). Accordingly, as Judge Matsch found in *Shook 3*, entering an injunction against undefined policies or standards may present a difficulty under the PLRA.

Now, plaintiffs have advised the Court that in February 2007, after the filing of the Amended Complaint, the defendants adopted a written policy as to "use of force."

---

[18]Judge Matsch specifically denied class certification in *Shook 3* because he found the plaintiffs did not meet the requirements of Rule 23(a)(2) (common questions of fact and law) and (3) (typicality). 2006 WL 1801379, at *1. Judge Matsch found an absence of common questions of fact and law because he held that the plaintiffs misapprehended the established law with respect to the prisoners' constitutional rights to mental health services. *Id.* at *5. He found the plaintiffs' case was based on the assumption that the Constitution affirmatively creates a right to mental health services, when it does not. He stated the Constitution prohibits denial of treatment for medical needs, including mental health needs of which jail officials are aware. He found that interest, to the extent protected by the Eighth Amendment, is highly individualistic and case specific, depending as it does on each inmate's mental health needs, and therefore not susceptible to class action treatment. *Id.* Thus, he concluded:

> Whether an inmate is obviously suffering from a serious medical condition due to a mental disorder depends on the events and circumstances giving rise to that prisoner's claim of deliberate indifference. "All persons with serious mental health needs who are now, or in the future will be, confined in the El Paso County Jail" is a group that is too amorphous to proceed as a class, even one under Rule 23(b)(2).

*Id.* at *8.

I find that this analysis by Judge Matsch may have impermissibly considered the merits of the plaintiffs' claims, an inquiry which I believe is not permitted at the class certification stage under *Shook 2*. Accordingly, I decline to follow Judge Matsch's analysis.

Exhibit 10 to Plaintiffs' Supplemental Brief. Although plaintiffs argue that this written policy does not provide any "meaningful guidance regarding the use of force," the plaintiffs have not stated exactly what injunctive relief they seek with respect to such a policy, nor do they identify what injunctive relief could be entered consistent with the PLRA. Nonetheless, as the Tenth Circuit held in *Shook 2*, this Court cannot deny class certification based on the possibility that injunctive relief consistent with the PLRA may not be feasible. If it develops during the course of this case that injunctive relief is not authorized due to the limitations of the PLRA, the Court can revisit the class determination.

On the other hand, I note that plaintiffs are also seeking declaratory relief. As counsel pointed out at the hearing, plaintiffs may be entitled to a declaration that some practices of defendants violated the constitutional rights of the inmates. At that point in the case, the appropriate injunctive relief, if any, can be considered. Thus, denying class certification at this stage because of the hypothetical difficulty of fashioning injunctive relief consistent with the PLRA would not only contradict the holding in *Shook 2*, but would unjustly deny class status without regard to the scope of the relief actually sought.

Accordingly, I find that this case may proceed as a class action under Rule 23(b)(2), as final injunctive or declaratory relief suitable to the class as a whole may be appropriate.

**Manageability**

As stated in *Shook 2*, "[e]lements of manageability and efficiency are not categorically precluded in determining whether to certify a 23(b)(2) class." 386 F.3d at 973. Defendants here argue that this case would not be manageable as a class action because it would require individualized, particularized trials of each inmate's claims, and thus class action status should be denied under Rule 23(b)(3)(D). I disagree.

I understand, and plaintiffs' counsel has represented to me, that this case will be a trial of defendants' practices and policies in general, or the lack thereof, and not a trial of the application of those policies in every given instance. Of course, plaintiffs will have to demonstrate that the policies and practices are in fact applied to the inmates. But they will not be permitted, or required, to make a showing of every incident where an inmate has been subjected to the alleged policies. I understand that the burden will be on plaintiffs to make a showing of typical situations, but not to exhaustively demonstrate every instance of alleged violations. With these guidelines in place, I conclude that this case will be manageable within the meaning of Rule 23(b)(3)(D).

## IV.    PLAINTIFFS' OBJECTION TO ORDER OF MAGISTRATE JUDGE

Plaintiffs appeal (Dkt. # 76) from an order entered on the record by Magistrate Judge Michael J. Watanabe on July 10, 2007 (Dkt. # 73) in which he granted defendants' motion for protective order (Dkt. # 64) and denied plaintiffs' motion to "permit standard discovery" (Dkt. # 65). The minutes of the hearing reflect the Magistrate Judge's order as follows:

> Counsel are advised that the scope of the case is outlined in the scheduling order, meaning discovery is limited to the four named plaintiffs. In addition, Plaintiffs may inquire into Garfield County Jail's policies and practices, as applied to and relating to the four named plaintiffs, during the time frame in which the four named plaintiffs were incarcerated there. Should Judge Figa grant the motion for class certification, this Court will address the need to amend the scheduling order (Dkt. # 73 at 2).

Plaintiffs object to this order "because it limited the scope of discovery to the policies and procedures of the Garfield County Jail regarding the four main plaintiffs <u>and only them</u> during the time each was present at the Jail," arguing that such limitation is erroneous and contrary to law (Plaintiffs' Objection at 2).

As indicated by the Magistrate Judge's order, if I were to grant the plaintiffs' motion for class certification he would apparently reconsider the scope of discovery. As I have granted the motion to certify the class as to five of the claims asserted by the plaintiffs, Plaintiffs' Appeal from the discovery order (Dkt. # 76) is granted and the discovery order entered by Magistrate Judge Watanabe is vacated. The parties may return to the Magistrate Judge for any necessary orders regarding the scope of discovery.

## V. CONCLUSION

Plaintiffs' Amended Motion to Certify a Class (Dkt. # 7 is **Granted in part and Denied in part.**

I find that the requirements of Rule 23(a) and 23(b)(2) have been met with respect to the First, Second, Third, Fifth and Sixth Claims for Relief in the Amended Complaint. Those claims may proceed as a class action with the named plaintiffs

representing a class defined as "All persons who, now or at any time in the future, are or will be prisoners in the custody of the Garfield County Sheriff's Department."

The requirements of Rule 23(a) have not been met as to the Fourth Claim for Relief, and that claim may not proceed as a class action. However, Plaintiff Hogue's individual claim under the Fourth Claim for Relief remains in the case.

Plaintiffs' Appeal from the discovery order (Dkt. # 76) is **Granted** and the discovery order entered by Magistrate Judge Watanabe is vacated.

Dated: March 13, 2008

BY THE COURT:

*s/ Wiley Y Daniel*
Wiley Y. Daniel
United States District Judge